Filed 12/29/23  In re D.W. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.W. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E081703 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300198) |
| v. | OPINION |
| W.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.

Affirmed in part; reversed in part.

Shobita Misra, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel for Plaintiff and Respondent.

1

W.L. (Mother), contends the juvenile court erred in (1) finding her two children came within the jurisdiction of the juvenile court (Welf. & Inst. Code, § 300)[1]; (2) ordering her elder child removed from Mother's physical custody; and (3) not ordering the Riverside County Department of Public Social Services (the Department) to conduct a more thorough inquiry of Mother's claimed Indian ancestry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We reverse in part and affirm in part.

**FACTS**

Mother has two children: a 17-year-old son, D.W., and a four-year-old daughter, S.A. In May 2023, D.W. was caught drinking alcohol while at school. "[M]other was called to the school and arrived on campus with a belt in her hand." D.W. ran to the parking lot, and Mother chased him. They returned home, and Mother punished D.W. by giving him a list of chores to complete.

Rather than complete the chores, D.W. went outside. Mother called D.W. inside. Mother and D.W. argued. Mother swung a belt at D.W. but missed him. D.W. told Mother to stop and grabbed her arm. Mother struck D.W. "with the belt and with her hands multiple times, as he attempted to hold her arms back." Mother did "everything she could to still hit [D.W.]," while D.W. tried to restrain Mother. Mother's boyfriend (Boyfriend) punched D.W. and placed him in a chokehold. Mother struck D.W. while Boyfriend held him in a chokehold. Boyfriend and D.W. fell to the floor together,

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

breaking a chair while falling. Mother continued trying to hit D.W. with the belt while he was on the ground. D.W. broke free from Boyfriend's continued attempts to restrain him and went outside. Mother followed D.W. outside and continued trying to strike him with the belt. Neighbors stopped Mother and allowed D.W. to stay at their home.

Due to the violence, D.W. suffered "a large circular bruise on his left shoulder, a circular bruise on his right arm, a scratch on his chest and a ½ inch cut on his right jaw area, which he reported was caused by the belt. He did not have marks on his neck from being choked, but reported he received scratch marks on his back from [Mother's] nails." Mother suffered "bruises on her arms and shoulders and a scratch on her elbow." Mother blamed D.W. for the violence and wanted him "placed in a camp by court order." Mother "repeatedly stated she no longer will tolerate [D.W.'s] behavior and is not able to have him remain in the home." However, Mother did not want her parental rights terminated. Riverside County Department of Public Social Services (the Department) removed D.W. from Mother's physical custody.

In a petition, the Department alleged D.W. was at risk of suffering serious physical harm based upon Mother striking him with her belt and hands, and Mother permitting Boyfriend to choke, punch, and pin down D.W. while Mother struck D.W. (§ 300, subds. (a) & (b)(1).) The juvenile court found the allegations true.

**DISCUSSION**

A.    D.W.

1.    *LEGAL STANDARD*

Mother contends the juvenile court erred by failing to consider whether Mother's actions constituted reasonable physical discipline of D.W.

"Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of th[e] parental right to discipline [a child] turns on three considerations:  (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' [Citations.]  [¶]  Where parental discipline exceeds these limits, juvenile courts have not hesitated to uphold the assertion of dependency jurisdiction."  (*In re D.M.* (2015) 242 Cal.App.4th 634, 641.)

In explaining why it found the allegations to be true, the juvenile court said, "[T]here was a substantial altercation which actually spilled out into the outside, so much so that a neighbor did intervene."  We interpret the trial court's explanation as finding that (1) Mother's conduct was not genuinely disciplinary because Mother's violence was so out-of-control that a neighbor had to intervene to stop Mother from further harming D.W., and (2) the amount of punishment was excessive because the neighbor who witnessed the conduct felt the need to stop Mother.  Thus, the juvenile court considered the first and third factors and found against Mother.  Accordingly, we conclude the juvenile court did not err.

4

In a related argument, Mother asserts the record only supports a finding that her "intent was genuinely disciplinary." Intent is not the issue; conduct is the issue. The first factor is "whether the parent's conduct is genuinely disciplinary." (*In re D.M.*, *supra*, 242 Cal.App.4th 641.) Accordingly, we are not persuaded by Mother's intent argument.

## 2. *SUBSTANTIAL EVIDENCE: JURISDICTION*

Mother contends substantial evidence does not support the juvenile court's finding that D.W. is at risk of suffering serious physical harm.

A child comes within the jurisdiction of the juvenile court when "there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted." (§ 300, subd. (a).)

Boyfriend punched D.W. Boyfriend placed D.W. in a chokehold. Mother beat D.W. with a belt while D.W. was being held in a chokehold and while he was on the floor, after falling and breaking the chair. Mother's actions indicated that she lost control and physically abused D.W. If D.W. had not managed to break free from Boyfriend's restraint, then the chokehold and beating could have resulted in horrific consequences. The foregoing evidence supports the finding that Mother lost control of herself while striking D.W.

Further, there is evidence of Mother being violent with D.W. on prior occasions. D.W. said that after Mother gave him the chore list and he ignored it, when he came

5

back inside and argued with her, "she became aggressive, went upstairs and he heard the 'jingle' from [Mother's] belt. [D.W.] stated he immediately thought, 'Nope, not today.' " D.W. heard a jingle and he immediately knew that Mother would be beating him with a belt. That evidence indicates that D.W. is hit with a belt often enough to recognize the jingle sound the belt makes. The incident forming the basis of this case might be the worst of the beatings, but it is not an isolated incident.[2]

The evidence that Mother has beaten D.W. with a belt on multiple occasions, and that Mother has lost control in beating D.W. with the belt, constitutes substantial evidence supporting the finding that D.W. is at substantial risk of suffering serious physical harm inflicted nonaccidentally by Mother.

Mother cites the evidence that D.W. stated it did not hurt when Mother beat him with the belt. The full context of D.W.'s statement is: "[D.W.] informed me it did not hurt when he was hit with the belt and informed me his adrenaline was up due to the confrontation." We read that sentence differently than Mother. We read that statement as indicating that D.W. was so full of adrenaline, due to fighting for his life in the chokehold, that he did not feel the pain of being beaten with the belt. So, it is not that Mother was lightly striking D.W. with the belt. Rather, the chokehold was so intense that being beaten with the belt did not register at the time in terms of pain. Therefore, we are not persuaded by Mother's reliance on D.W.'s statement.

---

[2] At the jurisdiction hearing, the juvenile court said, "I don't have information as to prior occurrences." We disagree with the juvenile court because the record does include circumstantial evidence of prior abuse.

### 3.    *DISPOSITION*

Mother contends the juvenile court erred by ordering D.W. removed from her physical custody. We apply the substantial evidence standard of review. (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.)

"A dependent child shall not be taken from the physical custody of his" parent "unless the juvenile court finds clear and convincing evidence" that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

Mother beat D.W. with a belt while he was restrained in a chokehold and while he was on the floor. If D.W. had not managed to wriggle free from Boyfriend's restraint, he might have been seriously injured or killed, given the choking. Moreover, Mother did not take responsibility for her role in the violence. Mother continually blamed the violence in the home on D.W. Mother's failure to address her part in the violence constitutes substantial evidence that there were no reasonable means to protect D.W.'s physical health without removing D.W. from Mother's physical custody. Until Mother accepts responsibility for her part in the past violence, little progress can be made in preventing future violence.

Mother points to a statement that D.W. was unhappy being away from Mother. We provide the full context of that statement. D.W.'s attorney told the juvenile court,

7

"[D.W.] does wish to object to removal. He does not feel that he's in danger in his mother's care. From [D.W.'s] perspective, when he was with [M]other, he had a home, he had food to eat, he was with his sibling, he had access to friends, and was attending school. He was suddenly removed. He spent his birthday yesterday sitting in a [Department] office. He's sleeping on a cot. He utilizes the gym for a shower, and he feels his situation has deteriorated and he was better off in his Mother's care."

The juvenile court said, "I will note [D.W.] was at the Welcome Center for that duration of time, and had been desperately asking to leave the Welcome Center. . . . [¶] [S]o the Court does think that to some degree he may have actually been starting to downplay the allegations so that he could return home and not have to be at the Welcome Center." In our view of the record, D.W. wanted to be anywhere other than the Welcome Center, even if it meant returning to Mother's home. So, D.W.'s statements about wanting to return home do not equate with being safe in Mother's home. Rather, they equate with desperation to leave the Welcome Center. Accordingly, we are not persuaded by Mother's reliance on D.W.'s statement. In sum, substantial evidence supports the juvenile court's finding.

B.    S.A.

1.    *CONTENTION*

Mother contends substantial evidence does not support the jurisdictional finding that S.A. is at substantial risk of being abused. (§ 300, subd. (j).) We agree.

8

## 2.    *FACTS*

S.A. was at home during the violence involving Mother, Boyfriend, and D.W. However, she was upstairs—not near the violence. D.W. said that Mother does not physically discipline S.A., and she takes great care of S.A. A Department social worker observed that S.A. "was happy, healthy, and appeared to be well cared [for]." S.A. regularly attends a YMCA daycare, so she is often seen by adults other than Mother.

The Department left S.A. in Mother's custody. The juvenile court found true the allegation that D.W. was physically abused, which put S.A. at substantial risk of being abused. (§ 300, subd. (j).) The juvenile court ordered that S.A. remain in Mother's custody.

## 3.    *ANALYSIS*

A child comes within the juvenile court's jurisdiction when "[t]he child's sibling has been abused . . . and there is a substantial risk that the child will be abused . . . . The court shall consider the circumstances surrounding the abuse . . . of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

S.A. is a four-year-old girl. D.W. is a 17-year-old male. This evidence reflects D.W. is much older and in a very different phase of life than S.A. Prior to the violence, D.W. was caught drinking alcohol at school; he ignored Mother's punishment, which consisted of chores; and he argued with Mother. This evidence indicates that Mother's violence was not a random outburst that could befall S.A. Rather, the violence was a

9

severe reaction to D.W.'s behavior at school and at home. There is no indication that Mother has had any such aggression toward S.A. All the evidence indicates that S.A. is happy and well cared for. Furthermore, the Department's and court's decisions to leave S.A. in Mother's care indicate they do not believe S.A. is at substantial risk of being abused by Mother. In sum, we see no evidence indicating there is a substantial risk of S.A. being abused. Therefore, the juvenile court's finding is not supported by substantial evidence.

The Department contends there is substantial evidence supporting the finding because D.W. "stated that [Mother] has physically disciplined him before and he used to get his ' "ass whooped." ' " The full context of that statement from the Department's report is: "[D.W.] stated the last time he was physically disciplined by [Mother] was one year ago. He said, 'I used to get my ass whooped, but not really anymore.' " That evidence does not indicate when the beatings started. For instance, there is no evidence of D.W. being beaten at age five to suggest that S.A. is at risk of similar abuse. Due to a lack of evidence, there is nothing to support the finding that S.A. is at substantial risk of abuse. We will reverse the finding pertaining to S.A. (§ 300, subd. (j).)

    C.    <u>ICWA</u>

        1.    *FACTS*

Mother told the Department that she has "Indian ancestry and tribal affiliation with a tribe from Louisiana." However, Mother did not know the name of the tribe. Mother said her cousin might have more information about the family's Indian ancestry,

but Mother declined to give her cousin's name and contact information to the Department.

Mother's mother (Grandmother) reported that D.W.'s great-great-great-great-grandmother had a tribal affiliation in "the region of Canada or the state of Maine, [but] was then separated from her siblings and family during slavery, and taken to Louisiana." Grandmother did not know the name of the tribe. Grandmother said her eldest sister and aunt might have more ancestral information. However, she wanted to obtain permission from her eldest sister and aunt to share their contact information with the Department.

The minute order from the jurisdiction and disposition hearing reflects the juvenile court found ICWA may apply to the proceedings. However, the reporter's transcript provides that the juvenile court found ICWA did not apply.

2. *ANALYSIS*

Mother contends the Department's ICWA inquiry was insufficient because the Department did not contact known maternal relatives, the Bureau of Indian Affairs, and tribes. "[D]isturbing an early order in a dependency proceeding is not required where. . . the court, counsel, and the [Department] are aware of [the] incomplete ICWA inquiry. . . . So long as proceedings are ongoing and all parties recognize the continuing duty of ICWA inquiry, both the [Department] and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*In re S.H.* (2022) 82 Cal.App.5th 166, 179.)

11

The minute order indicates the juvenile court is aware that ICWA may apply to the proceedings. In its respondent's brief, the Department asserted that its ICWA "inquiry is ongoing." Accordingly, there are indications that the Department and juvenile court are aware of the ICWA issues in this ongoing case. Therefore, we will remind the juvenile court to examine the ICWA issues. However, this is not an issue that would result in a reversal at this stage of the proceedings. Therefore, we will not delve further into the merits of Mother's ICWA contention.

## DISPOSITION

The finding that S.A. comes within the juvenile court's jurisdiction (§ 300, subd. (j)) is reversed. We remind the juvenile court that the ICWA duty of inquiry is ongoing, and D.W. has extended maternal relatives who may have further ancestral information. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

12